This appeal presents the question, I think, of how the district court should have interpreted and applied its own claim disruption. Because in the Markman hearing, VISA argued for a very narrow disruption of the claim permit issue, but the district court rejected that disruption. And based on the language of the claim disruption that was actually adopted, we thought Safe Clips had to validate that. Judge Armstrong said so. But then, on some rejection, rather than applying the disruption that we agreed to, the district court either inappropriately switched to a different claim disruption, much like what it had previously rejected, or it erroneously applied the agreed claim disruption to decide disputed issues of fact. And we submit that under proper construction, including the one that we thought we agreed to, there was more than enough factual evidence to support Safe Clips' claim of infringement. I thought the district court had ruled that the theory of infringement that you were propounding was one that they simply weren't going to listen to. Well, that's true, too, Your Honor, and we believe erroneously. I can address that issue first if you prefer. Well, if we agree with the district court that the theory of infringement you were espousing, which is massaging the password with the encryption, that you'd waive the right to make that argument, then the case is over, isn't it? I think if you agree that we waive it, yes. If, as a matter of law, you agree with the district court… Why shouldn't I agree with the district court? Well, let me address that directly. I think there are four reasons, at least, why that ruling was there. First, it was based on what we believe is clearly an erroneous factual finding as to what our disclosures show. And I'll get to each one of these in turn. Secondly, it was based on what we believe is a clear misapplication of the local rules and the requirements themselves. Third, the ruling was entered without providing Safe Clip a full opportunity to be heard on it. And fourth, and I think most importantly, there was no showing of prejudice, there was no finding of prejudice, there was actually no consideration by the district court of the issue of prejudice. On the issue of prejudice, looking at A4132 in the record, where you were basically arguing that it would be unfair to apply the local rule to you, and you're saying that the visa does not even allege that it suffered prejudice in this respect. That's A4132 at line 20? Yes. I looked through the entirety of the record that was given to us to see whether there was any other reference to the issue of prejudice. You're arguing that in the district court there was no prejudice. I didn't see any other reference. This is the only place in the brief. So I'm just asking you, this is the entirety of your prejudice argument that you made to the U.S. District Court? That's correct. It's pretty flimsy, isn't it? No, I don't think so, and I'll tell you why. The first thing is, this was raised for the first time by the visa in a reply brief. Prejudice was raised? No. No, the issue was striking a local requirement. Well, that's not unfair, is it? Not unfair in raising the issue. It's not unfair. I'm not saying it. I'm saying this was our response, and it made all of the arguments that we need to make. Number one, it made the argument that we in fact had complied with the local rule. I'm just trying to get at it, because according to your brief, this is a pretty grand, large argument. You've got to look at Rule 26 and 37, and they allied into the local rule, right? I never saw any of that argument being presented to the District Court judge. Well, Your Honor, again, in the context in which it came up... And whether there's prejudice or not, it's a factual issue, right? So I would think that if one was going to argue that Rule 26 and 37 are hived on to the local rule, and you can't, even though there's been a violation of the local rule, there can be no penalty for the infraction, absent prejudice, that that all would have been presented to the District Court judge, so she could have understood what the whole argument was. Well, the other thing that happened here, and this goes to my point about not getting a full opportunity to hear it, we don't have a lot of oral argument on this motion either. The entirety of some objective motion, although oral argument had been scheduled... Well, she never asked to amend your pretrial order, and I didn't. Did you petition for reconsideration here? We did not. We had a judgment... Well, what happened is the case comes up on appeal to me, and all of a sudden there's this whole big factual predicate rolling around, and the governor's supposed to figure out whether there is or is not prejudice, or actually what the local rule is. Well, we've addressed this in our brief, and let me cite the case in particular. The Ninth Circuit procedural law applies to the question of labor here. And we've cited the Smith v. Arthur Anderson case, which goes to this point. And what it says is that parties do not waive arguments in the nature of but receiving the argument they made in the district court. And I would submit, Your Honor, that we made the argument that we had complied with the local rule. We made the argument that there was no prejudice, and that should be a determining factor. And now what we've done is to go back and get, as I say, in the context, rather than in the context of a third reply brief, we've gone back and shown what the law is that supports the argument that we made below. And that's what the district court says you can do. Well, I didn't really – that's my point. Well, I asked you whether A4132 was the entirety of your prejudice Ninth Circuit Rule 2637 argument, and you said it is. Yes, and we have – and I'll tell you, we have been prepared to address this at length in the oral argument. Again, because the context and the lateness in the briefing in which it came out. Well, if a trial judge was going to make such a horrendously erroneous decision, I would think counsel would want to help the trial judge not to make such a horrible mistake by presenting the material in writing to the judge as opposed to a one-word reference to the subject matter. This is one word. It says it's on line 20 there. That's it. Well, I don't think it constitutes waiver to get to your point. And I think the law – Well, I mean, the up-and-up issue is whether or not your initial claim construction theory was broad enough to cover massaging the password with E. Yes, I think that is true. And the trial judge said, no, I don't think so. That's what the trial judge said. Right. Now, we, of course – And it's not an abuse of discretion standard of review? Yes, sir. Then how can I rule in your favor? Well, what I was beginning to go through are the – what we believe are four instances that all constitute abuse of discretion. The first being that the judge based the ruling on what we think is a clearly erroneous factual finding concerning what the disclosure is actually saying. The second is that it was based on what we believe is a clear misapplication of the requirements of the local rule that she was applying. And your first disclosure, right, was where? The page it issued begins at 2947. And it carries over. You see these are – we took what was one element and broke it up into different boxes. All right, and the factual finding I'm talking about is the judge's finding that we didn't reference the sending of the password at all. And I think what she did was to focus on – On method of sending, right? I think that she said we didn't reference the sending step or something like that. It said 2948 was your actual disclosure, right? The private uniquely identifying – Is the eventing entered by the cardholder, which it entered by the cardholder, I thought. Yeah, and this one, what you just said, points out what we think was the problem with the way the judge looked at this below. And that is on 2947 in the box at the bottom where it says transmitting an analogy. Right. That is actually the beginning of the element that's being disproved. And we just broke it up for convenience into pieces. And so when we talk about – It says the cardholder enters the required authenticating information, right? I'm on 2947? Yes. Okay. And then presses the purchase button to transmit that information, that information being the authenticating information, right? And when we talk about the browser window opening, you see at the top of the box there? Right. And is the authenticating information, the private identification code, uniquely identifying the transaction or computer? Yes, it includes that, yes. Right. And then over in the explanation there on 2948, it says this private identification code uniquely identifying is the authenticating information entered by the cardholder. Right. Not entered by the computer, not entered by some software that's lying in the computer, right? Well, that is true, but if you look at the – Well, I think that's what the trial judge was thinking, that what you said the first time around was entered by the cardholder, which includes the password, which, of course, the user types in. Yes, I agree that that is what the trial judge was thinking. And so the whole nub goes to, okay, what you really meant to be saying here was the private identification code is the authenticating information entered by the cardholder, then massaged by software of some sort, and then transmitted. Okay, and let me tell you why. But that's your theory. So the question then is, would a reasonable person disagree with you? Okay, and I guess the only thing I would disagree with you about is that I'm suggesting that the basic theory is already here in these documents. Plus the fact that you've got a footnote to reference 1, pages 2, 8, and 10 down at the bottom of the box, right, on page 29, because that's where you go find out about the E language, right, in reference 1. That's where I found it. That's where the SSL protocol was referenced, and that is what actually – and I'll tell you, there's an interesting issue here because – Let me just put it to you this way. Let's assume that I'm a district court judge, and I'm trying to decide whether I'm going to – whether you're right in telling me that this disclosure on 2947.48 was sufficient to put these on notice as to the entirety of your infringement theory. And the district court says, well, maybe it was, maybe it wasn't. It's ambiguous. And if it's ambiguous, it's a violation of the rule when you're trying to clear up an ambiguity. You didn't file a motion to amend here, right? Yes, sir. Which you couldn't. The local rules provide for a circumstance when perhaps there is some ambiguity or somebody might misunderstand. You can file a motion to say, well, what we were trying to say, Your Honor, was we're going to drag up the SSL protocol and everything that's mentioned in the footnote, and, you know, anybody, any idiot would know that you can't have this private code that identifies the computer if all you're doing is sending the password, right? Right. It's an insult to somebody's intelligence, including the district court judge, to say that the password alone will identify the computer, because it can't. Because my wife can go to a different computer in the same house and enter my password, and the receiver thinks it's the same person, right? Right. But my point is that if a reasonable person could try this, could say, look, I'm trying to decide here whether you're right or whether the other side's right, it clearly, the initial language talks about the information that is being entered by the cardholder without any assistance from software, right? That language in that box does, yes. In that box. But I guess my point is when you look at the transmitting portion, what it does is it talks about this browser window opening, and that is all part of this SSL channel that's established. Now, in the... Right, but a browser window can open, and you can type in your password without any massage. That's true. In fact, the only reason why the password's going to work, as I said earlier, is to identify the computer. Something has to be done to the password. Let me address that, because it comes up in the context, again, of why it is we're talking about it in the two computers, two transactions, two computers in the same time context, because that example was part of an experiment that Visa's experts did and which was first disclosed to us at 10 minutes to midnight the day before they filed their summary judgment motion. And it was raised in their summary judgment motion as the proof that the password doesn't identify a computer. Now, what we said was that when you've got this channel and the browser window's open, what you know from the password being entered through that channel is that you're identifying the transaction. The computer that started the transaction and the password being entered then says, this is the legitimate transaction or computer. In other words, it's being operated by a transaction. I can get to that in the patent language and why we think that's the right definition of transaction or computer. So we were talking about it in this context, always in the context of a single instance. Now, what Visa's expert did was say, aha, I can prove that wrong. And he went out and he's got two computers and he did this experiment. And then when we got notice of the experiment, on the day of summary, they filed a summary judgment motion in the form of this declaration. Keep in mind that this motion was filed prior to the closing of the government, prior to expert disclosures having been made, and prior to any depositions having been made on the experts. So what we did was say, well, we see what you're saying, but now let's talk about the detail of this secure channel that we've talked about, this window opening. And the detail behind that is that, actually, this SSL connection that we referenced and that goes to this window opening, this SSL connection is different for every computer because it's a unique key that's created for each session and each transaction. So the detail that we provided at that point, although still part of the exact same theory that was always there, was needed to reflect what was a new counter argument. And so this goes to my point about how the judge, we think, and this applies a lot. The local rule requires a chart identifying specifically where each element in each asserted claim is found within the accused instrumentality. We believe we did that. And we cited these documents showing where we got the information. It describes the SSL protocol. It describes how this window opens up and how that creates this secure communication channel that makes sure that you're talking to the computer that started the transaction, and when you get the password from that computer, we say you've identified the transaction on the computer. Okay? What the district court did was say we not only had to do that, but we had to anticipate this new argument that these are going to make and disclose our rebuttal to them. We hadn't thought about what would you say to the fact that you could do this with two different computers at two different times in the precise detail. Yet when that came up, the answer was there. It was there coming from all the things we already disclosed. It's just that we explained it in our summary judgment response for the first time because the argument had been made against us for the first time in the summary judgment brief. So that's how, as I say, we got what we got, and that's why we think that the application of the local rules was clearly erroneous, because it imposed a restriction, a requirement on us that does not come out of the language of the local rules. The language is a chart identifying specifically where each element of each asserted claim is found within the accused interdictality. Again, I say we've done that. Mr. Ferguson, just going back a second on the SSL aspect of the situation. As I understand it, your argument is premised on the fact that the SSL not only encrypts, but also sends an authentication type of a signal to the verifying computer? No, the authentication is that the password that the user has identified, which then gets encrypted, and then is successfully decrypted at the verifier. In fact, the right password is verified to the verifier computer. To identify the individual sender, not the computer. Well, what it does is it does two things. It identifies the computer as being the one that was at the start of this transaction. And it also says, in addition to that verifier, you know that that computer at the start of this transaction is being used by an authorized cardholder. And that's because of the password. The password is right. Let me see if I understand the mechanics here, and just stepping back from a legal question, but just looking for mechanics. To use the example that's used in the briefs, I pick the password dog, and I send the password. Meanwhile, when I send it, my computer encrypts that password, pursuant to the SSL protocol, I suppose, into a form that the authenticating system will recognize for two features. One is it will recognize the fact that that says dog, and that, therefore, the fellow that uses the dog password is the fellow that's on the other end of the line, or somebody that's stolen his password. But it will also recognize the style of encryption, or whatever the features of the encryption, as being particular to a particular computer that's being used in this transaction. And every time there's a further communication, in the course of that transaction, it will know whether it's dealing with that particular computer, and to the extent that it's translating DGJM256 into dog, it will know it's presumably dealing with me. Is that what it all comes down to? It will know that it is dealing with this, because of the encryption, it will know that it's dealing with the same computer that started that transaction. The same computer, and because of the password, it will assume that it's dealing with me. Because, based on the assumption that only you know your password. Or that somebody that you authorize used your password. It's an authorized transaction by the protocol. That's essentially the two pieces of information that the verifier gets from the combination of the password, plus the fact that it has been encrypted, by a computer-specific protocol. A computer-specific encryption. Now, does the verifying computer remember forever that it was my computer? So, if I come back a week later for another transaction, to the same company I'm trying to buy something for, do they automatically identify me at my computer? Did I leave my cookies or something with... The patent doesn't require that, and they don't use the Visa system for it, or does it? It's interesting, because Visa has tried to distinguish their system on the ground, that you can use the Visa system from any computer, anywhere. But that really doesn't distinguish the patent, because the patent talks about the same thing, even in the beginning part of the description of the patent. I don't get the exact language. Column 2 in line 9 of the patent, it says, a single or multiple computer system may access a transactional computer at different times. And then it goes on to describe a system, which I'd suggest is very much like Visa's, where it says, each of the transactional computers is associated with one of the transactors, or in other words, identifies a particular transactor during an electronic transaction. And so in other words, what that says is that there can be more than one computer that can serve as a transactional computer at different times, but what defines the transactional computer is that it is identified with the transactor or that particular electronic transaction. That is exactly what the encryption of SSL plus the password do in Visa. Now, I know I'm a little bit over, but I'd like to address what I see as kind of the key to the substantive error, we believe, that the district court made in looking at that question and addressing it. The claims themselves don't require a one-of-a-kind identification code, yet that seems to be what they say uniquely identified. Let me address, there's a question that came up below and I think it's an important question to ask, what does it mean to uniquely identify or go in the district court and screw the claim singularly identified? What we say is it means that the code is the one unique code that indicates that the computer is in fact a transactional computer. There may be a thousand people that use dog as their password, but this code is the one that's on file with the verifier. There's only one code on file with the verifier that says yes, this is an authorized transaction. For that credit card number you mean? Yes, exactly. So that if I've got credit card one, two, three, four, five, six, seven, eight, what's it do if dog is a favorite password just so long as it's not, so long as it's only associated with the correct credit card number the transaction will know that, the recipient will know? Well, I think that's right. Presumably they won't let more than one person have dog. Sorry? Presumably they won't let more than one person have dog. I think they would, although I don't know. I don't think it's necessarily true that you could exclude everybody from having a similar password or the same password. However... What do you do with two users of the card that have different passwords? Like father, daughter? I presume that would be fine. I've got the same situation at home. And I picture my daughter to have different passwords than me. But I would say that the unique part of it means that there's one password that will work. And it would be interesting because it doesn't say a unique code in the sense of there's only one life in the world. It says a code that uniquely identifies. And I think that that means that it needs to be the one code that will work for this account rather than saying it has to be a one-of-a-kind permanent identifier for a computer. But what the district court then did was to look at this thing called the man in the middle attack. But Mr. Ferguson, one quick item. The language of the claim is a private identification code uniquely identifying the transaction of computer. So you still need to identify the computer itself. Yes, sir. And that's where, in the context of the Beaver system, what we've said is it identifies the computer as that term is used in the patent. In other words, it shows to verify that the computer being used for this transaction is, in fact, being used by the authorized transaction owner. Remember that I said that the way the transaction or computer is described is as the one being identified with a transaction for a particular electronic transaction. Okay? So that by having the code that is identified as the transaction, that's the first part of identifying the transaction of a computer. The second part is that it is the computer being used in this transaction. So the code that says, yes, it's me, Mark Ferguson. I'm the authorized cardholder. You can tell because I have the right password. And then it's the... by going through this SSL secure tab in the encryption, you know that it came from the same computer that initiated the transaction. That is a tagline to the SSL encryption of the password and the other information that is transferred. It's the same computer as you type the password into. Because when you type the password into the computer and zoom the passwords on its way to someplace for the credit card company to look up the number and say, oh yeah, Clevenger's password is dog. So they say, that's okay with that. Something has happened to the password that allows the person that's checking the password to say, I know that this came from the computer when the person typed in dog. That can't be very complicated. That's not rocket science, is it? I don't think that it is. I mean, not in today's computer where it was once sometime, but I don't think today it's not rocket science. Just as a practical matter, I mean, I can certainly see what the practical advantage would be of having a system that would give you a permanent knowledge of the identification of the computer being used by one of your clients. So that if somebody shows up from a new computer, the yellow light at least goes on, or the red light. But what is the practical advantage in a single transaction of learning the identification of the computer? What is the risk against which that is a useful hitch? Well, what it does is it allows immediate feedback communication to someone who is able to immediately say, yes, it's me, the authorized transactor. A lot of these credit card fraud transactions come up, or at least before this kind of system came up, where merchants would misuse, road merchants would misuse client information. You know, bad internet actors would portray themselves as legitimate merchants, steal a card, get the card number, get other information, and then go out and throw out other cards. Sure, sure. But where does that, where does the information about the identity of the particular computer for purposes of that transaction only, I mean, is that something you can then retrieve in order to find out where the merchant was, or what's the utility? No, no. It's the immediacy of the ability to get feedback from the person who's in possession of the actual... Well, just assume that the credit card company has never had any rules before on what a password could be, so it could be dog, and they want to tell you they're going to change the rules, so it now has to be a combination of letters and numbers. Sure. So they can communicate right back to you and say, we're verifying dog, but if you ever want to have another transaction, you have to change your password. Is that the information that the verifier would want to send back to the computer? No, I don't think that would ordinarily go back to the computer. But if I may, Jeff raised an interesting point that I want to make sure  Yeah, I'm not sure I'm clear yet. Yeah, and the answer is that the idea behind it is you get the immediacy of the ability to get feedback from the person in possession of the password, which you wouldn't have if a rogue merchant had stolen, let's say, the credit card and authentication information that's on the card associated with the card itself. Because keep in mind, the merchant never gets the password. That's what this third-party thing  So the merchant, even if he became a rogue merchant and stole all the credit card information, doesn't have the ability to go and get the information back without doing using a verified by Visa transaction because it doesn't have the password. Okay, that's fine, but that is the protection given by the password, right? What I'm looking for is, in other words, suppose the rogue merchant happens to say to me, say, what's your password? And I foolishly say, I use dog. Isn't that silly? And the rogue merchant then goes to the back of his shop and uses my Visa number and my password and sends that and makes a huge purchase. How is what additional security is provided by a system that tells Visa what the particular computer is for the purposes of that transaction that isn't provided by a system that just makes sure that the password is the correct password? I don't think the patent is directed to that. What is the The patent is directed to, and it talks about it in the summary section, a system that gives you the ability to get immediacy of feedback from a password holding card holder. Why do you need to identify the computer from which the password was sent in order to get feedback from the password sender? That's not necessary for the communication to go on. Well, it is in this sense, it eliminates and the patent talks about it eliminates the need to use things like fax and e-mail which are imperfect mechanisms for having this kind of communication. Whereas if a transaction is coming from computer A and the message goes right back to computer A and is returned from computer A, you've got immediacy and the mere fact of the message coming from computer A identifies the specific transaction and says yes, that transaction, the one that was initiated by this computer, is authorized. Well, is this no more than saying that every time I send a message over the internet, part of the message is the address of my computer? Is that the IP address? And for most people's computers, the IP address is dynamic. In other words, it changes every time you log on. Now, there is a separate computer ID called CPU ID which is permanent to a computer. And that is sometimes and sometimes not transmitted in connection with various communications that may take place either over the internet or otherwise. But what I would say to you is that the patent says nothing about having to have a permanency to it. It does talk a little bit about the fact that you could possibly add audit features to something like this. And I would say that the patent does not exclude the use of a frozen IP code. But it doesn't require it nor does it require in this claim or elsewhere the ability to do an audit function. And of course there are audits that can be carried out on the verifier side. They may not tell you the specific name or location of the computer. But they certainly... Are you actually saying that a conversation can't occur between the sender of the password and the recipient of the password unless the recipient knows what computer the password came from? What I'm saying is that the knowledge of what computer that password came from is a simple and effective way of authenticating a transaction that was also initiated on that computer. More simple, say, than a fax to the person at their own fax number or an email at a given email address. But in combination with the password. It always has to be in combination with the password, right? The password has entered and sent in the business process. It always has to operate that way. It always does. But in the case of my rogue merchant who happens to have extracted from me my password, it doesn't do you any good. If you give away your password to this patent, it won't protect you either. So the information, there isn't any marginal utility for security purposes to the information about the particular computer for purposes of that single transaction that's conveyed to the verifier, right? I think that's true. In other words, I don't think this patent is meant to address that problem. Although you could use this patent together with added features in a way that might. Okay. Very well. Why don't we hear from Mr. Young. We've gone, I'd say, at least a bit over time. But we'll give Mr. Young, that's fine. Again, you have questioned extensively. We'll give Mr. Young some additional time. That's fine. Thank you, Your Honor. May it please the Court. You don't have an obligation to answer  I think it's a good opportunity to. I will try not to, Your Honor. Let me address with a couple of citations to the patent, the issue that the Court was just considering with Mr. Ferguson, which is what the function is of having a private association with the            address the original idea that the court was focused on disciplinary action, and I didn't think that it really was a good idea. I think that  court was focused on disciplinary action, and I don't think that it was a good idea. I think that the court was focused   action, and I don't think that the court think that the computer is involved in that is simply the statement of a state of being. Now, Mr. Young, what about their argument that the computer is identified through the SSL encryption? The SSL protocol itself states that in order to identify a computer, you would have a digital certificate associated with that computer that would convey information that was particular to the computer. The only thing that the SSL protocol does is assure the receiver that there hasn't been a transaction that has done the sending. Now,  diagram, the reply brief, I find to be rather confusing. Well, it says which computer, whether it was an Apple or IBM or whatever, but it does identify the computer as the one  was used. The person had five computers in the house, right? You think that claim language requires you to identify which of the five computers was used? That's what unique or singularly means, Your Honor, yes. Well, it said uniquely identifying, right? That's what the claim language is? Yes, and unique means different from everything else. And in order to uniquely identify or singularly identify a computer, one must have the information that allows one to distinguish that computer from other computers. Now, you get to the reply brief, because Isn't that impossible? It is not impossible, Your Honor, as the patent owner or the patent inventor himself described, and as the uncontested evidence shows, it is possible through a CCUID, for example, to have an identifier that is specific to a particular computer, and that could be used to communicate with the same computer and extract the log files from that computer as described in the audit functions that are set forth in the specification. How do you answer on page 8 of the gray brief? The visa argues that identifying a transactional computer by matching the password, so on and so forth, is simply not so. Verified by visa transmits a password using encryption. In this way, the verified by visa password associates the one and only computer that is used in a particular kind of transaction. The only thing that the encryption does is say that the computer sending the password is the same one that was being used for the communication. To transmit the password. Correct. That's a very good question. It's the first time it's said. For example, I suppose to take your example, when a lawyer stands up and says I'm the lawyer arguing this case, Mr. Ferguson stood up and said I'm the lawyer arguing for the appellant. Later I was looking around the room and said isn't that what's going on here? Isn't that specific particular information identifying him, perhaps not by name, but by role in the so-called transaction? It doesn't identify the computer or the lawyer in that case because there's no way to track that lawyer or that computer down after the transaction is complete. That goes to the question of whether it's permanence or transaction specific, but I thought you were making a broader point that it really gives no information. Well, permanence, I know that's safe to contention, but let me analogize to the use of the word identify in the specification with respect to a transaction or. The patent says a credit card number identifies uniquely a transaction or. You can find the transaction or after the transaction using the credit card number. Now, that doesn't mean that the cardholder can never change his or her credit card number. Or somebody can't steal it. In which case you would change the credit card number. In which case the effort to equate the credit card number and the credit card holder would simply fail. There are some instances in which there's failure. But it will generally identify over the great bulk of cases. The purpose is set forth in this patent which talks about the transaction or computer which has to have the same meaning in both the specification and the claims. Being in possession of log files which can be retrieved after the transaction to perform an audit or to do studies about faulty transactions, the reasonable and necessary way of looking at identification of the computer uniquely is in the way that the district court looked at it. Now, the man in the middle    computer and he's looking at multiple transactions. Not taking into account multiple transactions, but just looking at one single transaction. The system does not have the ability to identify the computer as being the one that is being used even by the transaction or the genuine transaction or the problem with the theory that's being asserted here is that the only thing that can be told is that there's some computer, maybe it's the real transaction or it's computer, maybe it's somebody else's computer, and that the password has been entered by whoever is using that computer. But if the short of the person trying to subvert the system obtaining the encryption system being used by the transaction or computer, isn't the transaction or computer plus the password going to give you unique identification at least for that transaction? How would one go what would be the circumstances that would lead to the in an encryption system would lead to a misidentification in the course of the same transaction of the transaction or computer? There's no practical value in that kind of quote-unquote identification if one would have agreed with the password doesn't tell us anything about the transaction or computer. Now why not? I thought that... Let me provide some definitions of identified if I may. At page 82 of the appendix there is a definition from the modern dictionary of electronics which says that identified in a computer means to attach a unique code or code name to a specific unit of information. The Webster's 2 dictionary which is not in the record says that identity is the collective aspect of the characteristics by which a thing is distinctly recognizable or known, a set of behavioral or personal characteristics by which an individual is recognizable. Those are definitions of the word identified which don't serve  sort of identifying purpose. Simply to say the computer being used by the transaction or is the transaction or computer doesn't serve any sort of identifying purpose. And it lies in the face of the audit functions which specifically require that anything that's called the transaction or computer be capable of being identified so that log files can be recovered from it after the transaction is over. The district court had it right when it simply said yes, they know I'm communicating with a computer because I'm communicating with a computer but that doesn't tell them which computer it is. The password only identifies the transaction or maybe the ACS knows that whoever is using that computer knows the password but that is solely identification of the transaction or which the claim construction to which it is stipulated below specifically precludes from meeting the requirements of this claim. I would like to go on unless you have further questions on the identification issue to the procedural rule issue. What happened in this case was litigation by ambush both of Visa and of the court. And I'll go into the second part of that a little more. I think there's been a lot of discussion of what was said in the actual final infringement contentions that dog in fact is the password entered by the owner and therefore was expressly excluded from the contentions that were made below in accordance with the local rules. How was your client prejudiced by the violation of the local rule? The prejudice resulted or appears in the fact that a motion was filed based on the claims that were made previously. The motion was filed based on what Visa believed to be the clear... Is that a monetary prejudice? Cost you some money to do something before? Yes, it did. There's a CD-ROM in the record that constitutes an alternative to the claim that was being made in the final infringement contentions. That experiment cost money. Experts are extensive. As it turned out, that expert's experiment turned out to be irrelevant to the issue that was raised in opposition to the motion for summary judgment because SafeClick didn't even pursue the theory that the password entered by the car holder was the identification code for the computer. So you have a great deal of prejudice there. Is prejudice a requirement? No, Your Honor. And that's a good point. We believe that this court should follow the Genente case where the court found unavailing an argument of prejudice. The reason being that the policy of this court in law and district courts to enforce the local rules is to bring a degree of orderliness and timeliness. In that case, they found the argument of prejudice unavailing because you said you weren't prejudiced. I don't think they said there's no law that requires a showing of prejudice to prevail in a real infraction. The court emphasized the policy and I believe you're right that beyond the mention of the prejudice... They wouldn't have raised the subject of prejudice unless it was a requirement or a potential requirement. What's the law? It's the law in the local courts out there. The cases cited to us in the earlier versions of the local patent rules, there was an opinion that Lowell Jensen dealt with prejudice, right? We wouldn't have been talking about prejudice if there wasn't some requirement. That was a case that was brought under rule 37 and rule 37 does contain an element of prejudice. We believe that the abuse of discretion standard that this court should apply would allow the court in this case to apply those rules and where a    it. In Jensen's opinion he's talking about an Atmel case? Yes, Your Honor. I don't get it. I don't understand why there was a discussion of prejudice in that particular decision. I do not believe under this court's jurisprudence or the local rules as they currently stand that if someone fails to put a theory into their final infringement contentions that they can't show                                to the prosecution   No,    no concern about that. I don't think that  is a good thing .